**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

DONOVAN JOHNSON,

Plaintiff,

- against -

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE OFFICER
KEVIN KAVANAGH, NEW YORK CITY
POLICE OFFICER MIRIAM LASSO, NEW
YORK CITY POLICE OFFICER ALEX
LUGO, NEW YORK CITY POLICE
OFFICER RUBEN SANTOS, NEW YORK
CITY POLICE OFFICER "VEGA," SHIELD
NO. 27670, NEW YORK CITY POLICE
OFFICER "HENDERSON," TAX ID NO.
938648, NEW YORK CITY POLICE
OFFICERS "JOHN DOES" 1-8,

Defendants.

-----------------------------------------------------------------------X

**INDEX NO.** 14cv7598(JGK)(RLE)
**ECF CASE**

**JURY TRIAL DEMANDED**

**COMPLAINT**

Plaintiff DONOVAN JOHNSON, by his attorneys, STECKLOW COHEN &
THOMPSON, complaining of the defendants, respectfully allege as follows:

## I. PRELMINARY STATEMENT

**1.** Plaintiff DONOVAN JOHNSON ("Plaintiff") brings this action for
compensatory damages, punitive damages and attorney's fees pursuant to 42
U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights
are secured by said statutes and the Constitutions of the State of New York and
the United States.

**2.** Plaintiff DONOVAN JOHNSON is an African-American male who has
been subjected to repeated stops, detentions and arrests without probable cause
throughout the county of Bronx by members of the New York City Police
Department ("NYPD"). These stops and arrests were predicated on flimsy and
false pretexts, and have repeatedly been dismissed by courts and tribunals.
Plaintiff DONOVAN JOHNSON complains of three (3) such incidents here, and
contends that these incidents all occurred pursuant to a continuing custom or

practice of the NYPD in the Bronx of suspicionless and causeless stops and arrests of African-American males.

## II. JURISDICTION

**3.**    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(3) and (4) and the aforementioned statutory and constitutional provisions.

**4.**    Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy that gives rise to the federally based claims and causes of action.

**5.**    Plaintiff has filed notices of claim for all three (3) incidents discussed herein, and complied with all relevant provisions of GML-50.  More than thirty (30) days have elapsed since filing and none of the above claims have been resolved.

**6.**    Plaintiff concedes that his state law claims with respect to the January 15, 2013 incident herein are not timely, and does not interpose state law claims herein with respect to that incident.

**7.**    Plaintiff previously filed the action Johnson v. City of New York et al. in the Bronx County Supreme Court with respect to the February 8, 2013 incident herein, under index number 302560/2014.   That action was voluntarily discontinued by Plaintiff, on consent of Defendants, in a stipulation of discontinuance filed with the Bronx County Supreme Court on or about September 16, 2014.   Plaintiff submits that the state law claims from the February 8, 2013 incident were timely interposed, and are proceeded upon herein pursuant to new action tolling.

## III. VENUE

**8.**    Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(a), (b), and (c) and § 1402(b) because Defendant CITY OF NEW YORK maintains its primary and relevant place(s) of business in this district, and because the incidents described herein occurred in this district.

## IV. JURY DEMAND

**9.**    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

**10.**   Plaintiff DONOVAN JOHNSON is an American Citizen and a resident of the State of New York, County of Westchester, and City of Yonkers.

**11.** Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

**12.** Defendant THE CITY OF NEW YORK maintains the NYPD, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, CITY OF NEW YORK.

**13.** That at all times hereinafter mentioned, Defendants NEW YORK CITY POLICE OFFICER KEVIN KAVANAGH, NEW YORK CITY POLICE OFFICER MIRIAM LASSO, NEW YORK CITY POLICE OFFICER ALEX LUGO, NEW YORK CITY POLICE OFFICER RUBEN SANTOS, NEW YORK CITY POLICE OFFICER "VEGA," SHIELD NO. 27670, NEW YORK CITY POLICE OFFICER "HENDERSON," TAX ID NO. 938648, NEW YORK CITY POLICE OFFICERS "JOHN DOES" 1-8 (individually, "Defendant OFFICER ___"; collectively, "Defendant POLICE OFFICERS"), were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

**14.** That at all times relevant to this action, the Defendant POLICE OFFICERS, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

**15.** Each and all of the acts of the Defendant POLICE OFFICERS (collectively, "individual Defendants") alleged herein were done by said defendants while acting in furtherance of their employment by defendant THE CITY OF NEW YORK.

## VI. FACTS UNDERLYING PLAINTIFF'S CLAIMS

**16.** On Tuesday, January 15, 2013, at approximately 5:30 PM, Plaintiff was driving in the Bronx, New York near Nereid Avenue and Ely Avenue.

**17.** At that time, Plaintiff was stopped without cause by two Defendant POLICE OFFICERS.

**18.** Plaintiff was ordered out of his car without cause.

**19.** The Defendant POLICE OFFICERS made hurtful and insulting comments to Plaintiff.

**20.** The Defendant POLICE OFFICERS slammed Plaintiff against his car without cause.

**21.** The Defendant POLICE OFFICERS searched Plaintiff's car without his consent.

**22.** Plaintiff answered the Defendants' questions.

**23.**   Plaintiff was engaged in no unlawful conduct.

**24.**   Plaintiff was not in possession of any contraband.

**25.**   No warrants were open for Plaintiff's arrest.

**26.**   Plaintiff indicated to Defendants that he felt he was the victim of profiling.

**27.**   After the Plaintiff had been detained for approximately half an hour, the two Defendant POLICE OFFICERS presented Plaintiff with a DMV traffic summons for a defective headlight, even though Plaintiff's headlights were in perfect working order.

**28.**   Plaintiff took his car to a police precinct immediately thereafter, where a different police officer provided him with a paper confirming that his headlights were in working order.

**29.**   Plaintiff did not have to appear in court for this summons, but suffered emotional injuries and suffering from this incident.

**30.**   On the evening of February 8, 2013, as New York City was blanketed in snow from an ongoing blizzard, Plaintiff was locking up his car in a lawful parking spot outside of his daughter's mother's home in the Bronx when he was approached by Defendant New York City Police Officer Alex Lugo ("Defendant Officer Lugo"), Defendant New York City Police Officer Miriam Lasso ("Defendant Officer Lasso") and Defendant New York City Police Officer Ruben Santos ("Defendant Officer Santos").

**31.**   These Defendant POLICE OFFICERS proceeded to question Plaintiff in a hurtful and insulting manner.

**32.**   Plaintiff answered the Defendants' questions.

**33.**   Plaintiff was engaged in no unlawful conduct.

**34.**   Plaintiff was not in possession of any contraband.

**35.**   No warrants were open for Plaintiff's arrest.

**36.**   Plaintiff indicated to Defendants that he felt he was the victim of profiling.

**37.**   The Defendant POLICE OFFICERS proceeded to detain and arrest the Plaintiff, and falsely charged him with disorderly conduct violations and moving infractions.

**38.**   The Defendant POLICE OFFICERS falsely charged Plaintiff with disorderly conduct, even though at that time, in the beginning of a blizzard, no civilians were present to express or undergo inconvenience, annoyance or alarm such as to support an allegation of disorderly conduct.

**39.**   The Defendant POLICE OFFICERS falsely charged Plaintiff with moving infractions, even though they had not observed Plaintiff operating his car at any time.

**40.** After Plaintiff's arrest, he was held in police custody a number of hours before being released with four summonses.

**41.** After returning to court several times, one of the summonses issued to Plaintiff was dismissed, and he was acquitted of all remaining charges at trial.

**42.** Plaintiff was forced to incur costs and expenses, and to miss work, in returning to court to answer the aforesaid summonses.

**43.** On May 9, 2014, in the vicinity of East 234th Street and Bronx Boulevard in the County of Bronx, Plaintiff was once again pulled over and subjected to a harassing stop and detention by Defendant Officer "VEGA" and Defendant OFFICER "HENDERSON."

**44.** Plaintiff was once again questioned in an insulting and harassing manner.

**45.** Plaintiff answered the Defendants' questions.

**46.** Plaintiff was engaged in no unlawful conduct.

**47.** Plaintiff was not in possession of any contraband.

**48.** No warrants were open for Plaintiff's arrest.

**49.** Plaintiff indicated to Defendants that he felt he was the victim of profiling.

**50.** The Defendant POLICE OFFICERS falsely claimed that Plaintiff had run a stop sign and thereby intentionally or recklessly obstructed vehicular traffic, and issued Plaintiff a summons for Disorderly Conduct.

**51.** The Defendant POLICE OFFICERS falsely claimed that Plaintiff's car had an insufficient license plate light, and issued Plaintiff a DMV summons.

**52.** Plaintiff was detained for a period of time by the Defendant POLICE OFFICERS without lawful cause.

**53.** Both of the May 9, 2014 summonses issued to Plaintiff were dismissed.

**54.** Plaintiff was forced to incur costs and expenses, and to miss work, in returning to court to answer the aforesaid summonses.

**55.** In sum, Plaintiff was repeatedly held in unlawful confinement, caused to suffer physical, mental, and emotional injuries as a result of the Defendant POLICE OFFICERS' repeated false arrests and malicious prosecutions.

**56.** Plaintiff is entitled to both compensatory and punitive damages.

**57.** As a result of the foregoing, Plaintiff sustained, inter alia, mental injuries, emotional distress, embarrassment, temporary deprivation of property, humiliation, and deprivation of his constitutional rights.

## FIRST CLAIM FOR RELIEF
## <u>DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983</u>

**58.**   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**59.**   All of the aforementioned acts of the Defendant CITY, and the individual Defendants and their agents, servants and employees, were carried out under the color of state law.

**60.**   All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

**61.**   The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

**62.**   The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

**63.**   The individual Defendants, and Defendant CITY OF NEW YORK, collectively and individually, while acting under color of state law, engaged in Constitutionally-violative conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

**64.**   As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to their reputation and standing within his communities.

**65.**   As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.


## SECOND CLAIM FOR RELIEF
## <u>FALSE ARREST UNDER 42 U.S.C. § 1983</u>

**66.**   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**67.**   Plaintiff was repeatedly detained and arrested by Defendant POLICE OFFICERS in the absence of probable cause, under practices, policies or customs promulgated or tacitly ratified by Defendant CITY OF NEW YORK.

**68.**   Plaintiff was repeatedly detained, arrested and held in police custody for periods of time.

**69.**   As a result of the aforesaid conduct by Defendants, Plaintiff was subjected to illegal, improper and false arrests by the Defendants and taken into custody and caused to be falsely imprisoned, detained and confined without any probable cause, privilege or consent.

**70.**   As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to their reputation and standing within his communities.

**71.**   As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.


### THIRD CLAIM FOR RELIEF
### EXCESSIVE USE OF FORCE UNDER 42 U.S.C. §1983
_____

**72.**   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**73.**   Plaintiff was unnecessarily handcuffed for periods of time by the Defendant POLICE OFFICERS.

**74.**   Plaintiff was slammed against his car by the Defendant POLICE OFFICERS.

**75.**   The circumstances presented to the Defendant POLICE OFFICERS at the relevant times did not support any of the above applications of force on Plaintiff.

**76.**   Plaintiff was subjected to excessive force and was assaulted by the Defendant POLICE OFFICERS, in violation of his rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

**77.**   As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to their reputation and standing within his communities.

**78.**   As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. §1983
_____

**79.**  Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**80.**  The Defendant POLICE OFFICERS had an affirmative duty to intervene on the Plaintiffs behalf to prevent the violation of their constitutional rights.

**81.**  The Defendant POLICE OFFICERS failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite having had a realistic opportunity to do so.

**82.**  The Defendant POLICE OFFICERS failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which the Plaintiff's rights were violated by their affirmative conduct.

**83.**  The Defendant POLICE OFFICERS failed to intervene on Plaintiff's behalf in order to prevent the violation of his constitutional rights despite their awareness that his rights were being violated.

**84.**  As a result of the aforementioned conduct of the individual Defendants, Plaintiff's constitutional rights were violated.

**85.**  As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, and loss of wages, and damage to their reputation and standing within his communities.

**86.**  As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial..


## FIFTH CLAIM FOR RELIEF
## RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION
## UNDER 42 U.S.C. § 1983

**87.**  Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**88.**  Plaintiff verbally questioned Defendants' applications of authority against him in each of the incidents described above.

**89.**  Thereafter, in each instance, Defendants detained Plaintiff against his will, and charged him with crimes and violations in the absence of probable cause.

**90.**   The above-described charges were pretexts intended to retaliate against the Plaintiff for questioning Defendants' applications of authority.

**91.**   The conduct and actions of Defendants, acting under color of State law, in assaulting, detaining and imprisoning the Plaintiff were done intentionally, maliciously, and/or with a reckless disregard for the natural and probable consequences of their acts, were done without lawful justification, and were designed to and did cause bodily harm, pain and suffering both in violation of the Plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiff's exercise of their civil and constitutional rights of free speech and free expression as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**92.**   Defendants deprived Plaintiff of his liberty in violation of both his civil and constitutional rights, as guaranteed under 42 U.S.C. §1983 and set forth in the United States Constitution, First, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for the Plaintiffs' exercise of their civil and constitutional rights of free speech, free expression and expressive association as guaranteed by First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York, or for their proximity to those exercising said rights.

**93.**   Defendants actions were undertaken under color of law and would not have existed but for Defendants using their official power.

**94.**   As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

**95.**   As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

**96.**   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**97.**   Defendants misrepresented and falsified evidence before the District Attorney.

**98.**   Defendants did not make a complete and full statement of facts to the District Attorney.

**99.** Defendants withheld exculpatory evidence from the District Attorney.

**100.** Defendants were directly and actively involved in the initiation of criminal proceedings against Plaintiff.

**101.** Defendants lacked probable cause to initiate criminal proceedings against Plaintiff.

**102.** Defendants acted with malice in initiating criminal proceedings against Plaintiff.

**103.** Defendants were directly and actively involved in the continuation of criminal proceedings against Plaintiff.

**104.** Defendants lacked probable cause to continue criminal proceedings against Plaintiff.

**105.** Defendants acted with malice in continuing criminal proceedings against.

**106.** Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

**107.** Notwithstanding the perjurious, fraudulent and malicious conduct of defendants, the criminal proceedings were terminated in Plaintiff's favor, when all charges against them were dismissed or resulted in acquittal at trial.

**108.** As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, legal expenses and damage to his reputation and standing within his community.

**109.** As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SEVENTH CLAIM FOR RELIEF

## MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. §1983

**110.** Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**111.** Defendant THE CITY OF NEW YORK established unlawful municipal policies, practices, or tacitly ratified customs, including but not limited to:

    a. The enforcement of mandatory arrest quotas on the officers of the NYPD;

    b. Tolerating and condoning perjury by police officers;

    c. Tolerating and condoning misconduct by police officers, including the use of excessive force; and

    d. Tolerating and condoning racial bias against Latinos and African-Americans in the making of arrests.

**112.** As a direct result of these policies, Plaintiffs' constitutional rights were violated:

    a. Plaintiff was a victim of a false and retaliatory arrest by the Individual Defendants;

    b. Plaintiff was the victim of excessive force and other forms of police misconduct.

    c. Plaintiff was subjected to the actions of the Defendants because he is an African-American.

*The NYPD has a custom, practice, or policy of arresting individuals in order to fulfill arrest quotas*

**113.** The NYPD has established, city-wide, quotas applicable to precincts as well as to individual officers, requiring those precincts and officers to make a specific number of arrests per month.

**114.** This quota system is illegal, because it encourages and forces the precincts and officers to arrest innocent people in order to fulfill the quotas.

**115.** Indeed, the use of an explicit quota system has been documented at precincts in Brooklyn.[1]

---

[1]    Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online

**116.** This quota system is enforced by the very top levels of the NYPD through the Department's Compstat system.

**117.** In a full-page ad on page 15 of the May 7, 2012 edition of the New York Daily News, The Patrolmen's Benevolent Association made clear that the quota pressure comes from the top.  Referring to these quotas, the ad is headlined: "Don't Blame the Cop, Blame NYPD Management."

**118.** The NYPD uses Compstat to track such enforcement actions statistically.

**119.** The NYPD holds weekly crime strategy meetings, "Compstat Meetings," at which such reports are discussed.[2]

**120.** Compstat Meetings are attended by all commanders of Precincts, Police Service Areas, Transit Districts and other operational unit commanders within a given Patrol Borough, including the commanding officers and /or supervisors of precinct-based and specialized investigative units.[3]

**121.** Also in attendance are representatives from the District Attorneys' Offices as well as Transit and Housing Bureau Commanders whose jurisdictions lie within the patrol borough, Crime Strategy Coordinators from other patrol boroughs, and ranking officers from a variety of support and ancillary units (such as the Legal Bureau which do not perform direct enforcement functions.).[4]

**122.** The purpose of these Compstat Meetings is for the commanders to direct and modify street-level law enforcement policy based on Compstat statistics.[5]

**123.** At these weekly Compstat Meetings, commanders either ratify that the statistics show that the NYPD's street-level activities are correctly implementing the NYPD's stated policies, or street-level deployments are modified to bring these activities in line with such policies.[6]

**124.** In this way, the highest-level command of the NYPD exercises granular control over summonses and arrests for minor violations and quality of life offenses, as well as for stop, question and frisk activity.[7]

**125.** What street-level police officers do is a direct result of these command-level policies.

**126.** As the New York Daily News reported, NYPD supervisors give explicit instructions to street-level enforcement personnel that quantity, not quality, matters – promulgating a policy that comes from the very top of the NYPD

---

at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas-seat-belt.

[2]      Id.

[3]      Id.

[4]      Id.

[5]      Id.

[6]      Id.

[7]      Id.

hierarchy.[8]

**127.** Individual officers have stepped forward to denounce the NYPD's use of quotas, which are illegal.[9]

**128.** Officers that refuse to meet illegal quotas are subject to adverse employment actions and other retribution from their superiors.[10]

**129.** The NYPD officially denies that it maintains and enforces quotas.

**130.** However, the existence of this unconstitutional arrest quota custom and/or policy has been shown by the posting of lists of quantitative targets for various forms of summonses at the 77th Precinct in Brooklyn .[11]

**131.** The existence of the aforesaid unconstitutional arrest quota custom and/or policy may further be inferred from the tape recordings acquired by WABC-TV/DT, in which a 41st precinct sergeant explains that each of his officers is held to a twenty summons per month, and one arrest per month, enforcement quota.[12]

**132.** The existence of the aforesaid unconstitutional arrest quota custom and policy may further be inferred from the tape recordings acquired by the Village Voice, including, among other admissions, an 81st precinct sergeant telling his officers to make quota-driven arrests as directed by their superiors even if they must void the arrests at the end of their shifts.[13]

---

[8]     Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt. Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011.

[9]     Parascandola, Rocco, "Cops On Tape Pushing Arrest Quotas: NYPD Lt. Janice Williams captured on tape pushing for more busts, but brass says there's no quotas," The New York Daily News, March 3, 2011; Parascandola , Rocco, "An ex-Bronx cop Ex-Cop Sues City, Says Quotas Led to Firing: Ex-Bronx cop Vanessa Hicks suing city, says quotas led to axing,"
The New York Daily News, May 2, 2011; Parascandola, Rocco, "79th Precinct cops claim retribution: Nine officers say poor evaluations are payback from commander," The New York Daily News, April 10, 2012.

[10]     See id.

[11]     Fanelli, James, "Cops At Brooklyn's Crime-Ridden 77th Precinct Told To Meet Quotas For Moving Violations, Memos Say," New York Daily News, November 8, 2010. Article incorporated by reference herein and available online at http://articles.nydailynews.com/2010-11-08/local/27080554_1_memos-quotas-seat-belt.

[12]     Hoffer, Jim, "NYPD Officer Claims Pressure To Make Arrests," WABC News, March 3, 2010. Article incorporated by reference herein and available online at
http://abclocal.go.com/wabc/story?section=news/investigators&id=7305356.

[13]     Rayson, Graham, "The NYPD Tapes, Part 2: Bed-Stuy Street Cops Ordered: Turn This Place Into A Ghost Town."  Village Voice, May 11, 2010.

*The NYPD Tolerates and Condones*
*Widespread Police Perjury*

**133.** NYPD policy rewards arrests that are based on false statements in criminal complaints sworn by NYPD officers.

**134.** As United States District Court Judge Jack Weinstein wrote: "Informal inquiry by [myself] and among the judges of this court, as well as knowledge of cases in other federal and state courts ... has revealed anecdotal evidence of repeated, widespread falsification by arresting officers of the New York City Police Department."[14]

**135.** By its nature, the true extent of police perjury has not been documented. The Mollen Commission in the 1990's found that police perjury was so pervasive that the police even had a word for it: "testilying."[15]

**136.** Police perjury often involves lying about matters that are outcome determinative in litigation, and that go to the heart of a defendant's guilt or innocence.[16]

**137.** Certain types of arrests occur with such frequency that the pattern and practice of police perjury has been at least partially exposed.

**138.** In 2008, the New York Times documented at least 20 cases in federal court in which police provided false boilerplate testimony to justify searches and seizures of guns.  These cases represented only that small fraction of cases in which the boilerplate testimony could be challenged with more than the word of the defendant.[17]

**139.** The NYPD has taken no steps to disincentivize – much less punish – the practice of perjury that underlies these arrests.  Indeed, the number of such arrests continues to increase.[18]

**140.** Nor has the NYPD taken any steps to punish police perjury in other

---

Article incorporated by reference herein and available online at
http://www.villagevoice.com/2010-05-11/news/nypd-tapes-part-2-bed-stuy/.

[14]     Marzulli, John, "Judge Jack Weinstein rips NYPD on false arrests as brothers sue for $10M over wrongful narcs bust," The New York Daily News, Nov. 30, 2009.

[15]     Cunningham, Larry, "Taking on Testilying: The Prosecutor's Response to In-Court Police Deception," *Criminal Justice Ethics* Winter/Spring 2009.

[16]     Id.

[17]     Weiser, Benjamin, "Police in Gun Searches Face Disbelief in Court," May 12, 2008.

[18]     Parascandola, Rocco and Sarah Armaghan, "Arrests for low-level pot possession higher in 2011 than 2010, despite NYPD directive restricting busts Marijuana arrests near an all-time high," The New York Daily News, February 2, 2012; Beekman, Daniel, Study claims NYPD made hundreds of unlawful pot arrests," The New York Daily News, April 03, 2012.

contexts.

**141.** There is a nexus between arrest quotas and the NYPD's toleration of police perjury: **police under pressure to make their quota of arrests make false arrests based on perjured accusations in order to do so**.[19]

*The NYPD Has a Policy and Practice of*
*Tolerating Police Misconduct*

**142.** When the Civilian Complaint Review Board substantiates claims of police misconduct, The NYPD usually does **not** follow the board's recommendations that officers guilty of misconduct be given the most serious penalty. From 2002 to 2010, the board recommended that 2,078 officers receive the most severe penalty. That suggested discipline was given to only 151 officers.[20]   Thus, the Department has set a policy that the consequences of misconduct will be mild or nonexistent.

**143.** This pattern of toleration of violent police misconduct by the NYPD is a policy and practice of long standing: in 2007, the New York Civil Liberties Union found that the NYPD's practice if "condoning" police misconduct actually got worse over the period of time studied (1994-2006).   The NYCLU researchers found that of the more egregious cases of misconduct that have been substantiated by the CCRB and referred to the NYPD for disciplinary action between 2000 and 2004 – the last year for which complete data [were then] available on disciplinary action – the police commissioner has rejected the CCRB's findings in 63 percent of those cases. When discipline was imposed, it was strikingly lenient in light of the severity of the misconduct that has been documented by the CCRB.[21]

**144.** Similar indifference to substantiated allegations of police misconduct was documented in a 1998 report by the Human Rights Watch.[22]

*NYPD Has a Policy and Practice of Tolerating*
*and Condoning Racial Bias Against Latinos*
*and African Americans in the Making of Arrests*

---

[19]    Marzulli, John, "We fabricated drug charges against innocent people to meet arrest quotas, former detective testifies," The New York Daily News, October 13th 2011.

[20]    Baker, Al, "Independent Agency Gets New Powers to Prosecute New York Police Officers," March 27, 2012.

[21]    Mission Failure: Civilian Review of Policing in New York City (1994-2006), The New York Civil Liberties Union, September 2007.

[22] "Shielded from Justice: Police Brutality and Accountability in the United States," Human Rights Watch, June 1998.  Report incorporated by reference herein and available online at http://www.columbia.edu/itc/journalism/cases/katrina/Human%20Rights%20Watch/uspohtml/toc.htm.

**145.** NYPD "quality-of-life" enforcement unlawfully limits the use of the public streets by minorities (economic, racial, or sexual) disfavored by the NYPD.

**146.** The NYPD's enforcement policies are highly discriminatory against minorities, especially Black and Latino males.

**147.** The hundreds of thousands of stop-and-frisk encounters each year are another example of an enforcement policy that unlawfully targets minorities.

**148.** The past few years have brought an escalation in the number of stops that the NYPD makes each year.

**149.** In 2010, the NYPD is reported to have made 600,000 such stops. In the first three quarters of 2011, police stopped 451,000 totally innocent New Yorkers.[23]

**150.** Since 2004, this figure has topped 4 million instances of such police encounters; the overwhelming majority of whom are black or Latino.[24]

**151.** February 22, 2011, the New York Daily News published an article citing New York Police Department stops for the year 2010, which numbered 601,055. This figure marked a 4.3 percent increase from the year 2009, and African-American and Latino men accounted for approximately 85 percent of all stops.[25]

*The NYPD is Liable for Federal Constitutional Violations*
*By Its Officers Under Monell*

**152.** Defendant THE CITY OF NEW YORK and the NYPD established official policies directing and promoting unconstitutional practices by NYPD officers, and have tolerated, condoned and permitted widespread unconstitutional practices by NYPD officers, including the Defendants in this case.

**153.** Defendant THE CITY OF NEW YORK indemnifies and shields NYPD officers who repeatedly and habitually violate constitutional rights, such as the Individual Defendants.

**154.** Defendant THE CITY OF NEW YORK fails to discipline police misconduct, thereby insuring that such misconduct continues.

**155.** Defendant THE CITY OF NEW YORK fails to control NYPD Precincts or

---

[23] New Stop and Frisk Report Show 4 Millionth Street Stop," New York Civil Liberties Union, Nov. 29, 2011, incorporated by reference herein and available online at http://www.nyclu.org/news/new-stop-and-frisk-reports-show-4-millionth-street-stop.
[24] *See* Id.; *See also,* Christopher Robbins, "*NYPD Pats Down 4 Millionth Customer, as Stops and Frisks Increase by 13%,*" The Gothamist, Nov. 30, 2011, incorporated by reference herein and available online at:
http://gothamist.com/2011/11/30/nypd_pats_down_4_millionth_customer.php.
[25] Lesser, Benjamin, and Geldar, Alison, "Frisky business: NYPD summonses fall 20%; sources cite orders, fear of lawsuits," New York Daily News, February 24, 2011.  Article incorporated herein by reference and available online at:
http://www.nydailynews.com/new-york/frisky-business-nypd-summonses-fall-20-sources-cite-orders-fear-lawsuits-article-1.134246.

subdivisions in which police misconduct is especially prevalent.

**156.** Defendant THE CITY OF NEW YORK implements quotas for individual officers' arrests, thus incentivizing or compelling unconstitutional misconduct by individual officers.

**157.** Defendant THE CITY OF NEW YORK tolerates and condones police perjury.

**158.** These policies and practices caused the unlawful conduct of the Defendant POLICE OFFICERS.

**159.** As a result, the Plaintiff's constitutional rights were violated.

**160.** As a result, the Plaintiff was harmed.

**161.** The Plaintiff is entitled to compensatory damages in an amount to be determined at trial, together with attorneys' fees and costs.

**162.** That at all times, Plaintiff was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

**163.** The Defendant POLICE OFFICERS' particular acts of subjecting Plaintiff to assault, battery, use of excessive force, unlawful arrests, and other violations of Plaintiff's constitutional rights in the manner described herein, were the result of a perceived ease of charging and prosecuting minority, working-class individuals with crimes and/or violations in order to cover up for constitutionally-violative conduct.

**164.** The Defendant POLICE OFFICERS undertook the particular actions described herein against Plaintiff because Plaintiff is African-American, and therefore the Defendant POLICE OFFICERS knew or believed  that they could undertake these actions with impunity.

**165.** As a result of the aforementioned conduct, the Defendant POLICE OFFICERS violated Plaintiff's constitutional rights to equal protection under the law.

**166.** As a result, Plaintiff was harmed.

**167.** Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, physical injury, anguish, anxiety, fear, humiliation, and damage to his reputation and standing within his community.

**168.** Plaintiff demands compensatory and punitive damages in a sum of money to be determined at trial, together with attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF

## EQUAL PROTECTION UNDER 42 U.S.C. §1983

**169.** Plaintiff repeats, reiterates and re-alleges each and every allegation

contained in the above paragraphs with the same force and effect as if fully set forth herein.

**170.** At all times described herein, Plaintiff was possessed of the right to equal protection under the laws, as guaranteed under the 14th Amendment to the United States Constitution.

**171.** Defendant stopped, detained, arrested and used force against Plaintiff in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrest and incarceration would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

**172.** The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

**173.** The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

**174.** Plaintiff was falsely accused of crimes and violations and was taken into Police custody and detained against his will.

**175.** That following his arrest, Plaintiff DONOVAN JOHNSON was charged with crimes and violations.

**176.** That the above described charges were a pretext intended to justify Plaintiff's illegal arrests.

**177.** That the actions of Defendant POLICE OFFICERS heretofore described, constituted unlawful detention, imprisonment, assault and battery and malicious prosecution and were designed to and did cause specific bodily harm, pain and suffering both in violation of Plaintiff DONOVAN JOHNSON'S Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, Fourth and Fourteenth Amendments and the Constitution of the State of New York and in direct retaliation for Plaintiff DONOVAN JOHNSON'S exercise of his civil and constitutional rights of free, free expressive association as guaranteed by the Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

**178.** The particular arrest of Plaintiff is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals.

**179.** The particular arrest of Plaintiff is believed to have been motivated in whole or in part by a custom or practice of racism of victimization, not of hate, whereby minority individuals are charged with crimes and violations such as resisting arrest, disorderly conduct, and obstruction of governmental administration, in the absence of probable cause to arrest, due to a perceived ease of prosecution of such minority individuals, because the Defendant POLICE OFFICERS informed Plaintiff that he was being arrested after it was already established that Plaintiff was not engaged in illegal activities, nor carrying any weapons or illegal substances, and did not have any outstanding warrants against him.

**180.** The Defendant POLICE OFFICERS, through their actions, carried out discriminatory applications of the laws, driven by a discriminatory motivation in utilizing what might otherwise be facially neutral statutes due to a perceived ease of prosecution of minority individuals such as the Plaintiff.

**181.** As a result of the aforementioned conduct, the Defendant POLICE OFFICERS have violated Plaintiff's constitutional rights to equal protection, and Plaintiff is entitled to seek redress under 42 U.S.C. §1983, and is further entitled to injunctive relief to the extent necessary to prevent further disparate treatment and retaliation.

**182.** The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

**183.** The foregoing customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

**184.** As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, Plaintiff was subjected to excessive force, false arrest, malicious prosecution and excessive and unnecessary detention.

**185.** As a result of the foregoing, Plaintiff was caused to suffer personal injuries, violations of his civil rights, negligent and intentional infliction of emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, legal expenses, and damage to his reputation and standing within his community.

**186.** As a result of the foregoing, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## NINTH CLAIM FOR RELIEF

## STATE LAW FALSE ARREST AND IMPRISONMENT

**187.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**188.** The Plaintiff was seized and confined by the Defendants, without legal justification or privilege.

**189.** The Plaintiff was aware of his confinement.

**190.** As a result, the Plaintiff was harmed.

**191.** Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, physical injury, anguish, anxiety, fear, humiliation, and damage to his reputation and standing within his community.

**192.** The Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

## TENTH CLAIM FOR RELIEF

## STATE LAW ASSAULT AND BATTERY

**193.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**194.** Defendants intentionally threatened imminent, offensive, and harmful contact with Plaintiff.

**195.** Defendants intentionally made bodily contact with Plaintiff in a manner that was offensive in nature.

**196.** Defendants made such bodily contact with Plaintiff without Plaintiff's consent.

**197.** Defendants made such bodily contact with Plaintiff without privilege to do so.

**198.** To the extent that the Defendants were privileged to make contact with the Plaintiff, the Defendants used force that exceeded that reasonable and necessary under the circumstances.

**199.** As a result, Plaintiff was harmed.

**200.** Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, physical injury, anguish, anxiety, fear, humiliation, and damage to his reputation and standing within his community.

**201.** The Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

## ELEVENTH CLAIM FOR RELIEF

### RESPONDEAT SUPERIOR AGAINST
### DEFENDANT THE CITY OF NEW YORK FOR STATE LAW CLAIMS

**202.**  Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**203.** The Defendant POLICE OFFICERS were at all times acting within the scope of their employment as employees of Defendant THE CITY OF NEW YORK.

**204.** The actions of the Defendant POLICE OFFICERS were generally foreseeable and a natural incident of their employment by Defendant THE CITY OF NEW YORK.

**205.** As a result of the actions of the Defendant POLICE OFFICERS, the Plaintiff was harmed.

**206.** Defendant THE CITY OF NEW YORK is liable for the actions of the Defendant POLICE OFFICERS.

**207.** Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, physical injury, anguish, anxiety, fear, humiliation, and damage to his reputation and standing within his community.

**208.** The Plaintiff is entitled to compensatory damages from Defendant THE CITY OF NEW YORK in an amount to be determined at trial, together with attorneys' fees and costs.

## TWELFTH CLAIM FOR RELIEF

### STATE LAW NEGLIGENCE

**209.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set

forth herein.

**210.** The Defendants owed a duty to Plaintiff to prevent him from being subjected to false arrest, malicious prosecution and assault and battery, and violating Plaintiff's constitutional rights in the manner described herein.

**211.** The Defendants breached this duty to Plaintiff in numerous ways in the course of the incidents set forth above.

**212.** The Defendants' breach of their duty owed to Plaintiff was the direct and proximate cause of Plaintiff's injuries.

**213.** Plaintiff received both actual and substantial physical and mental injuries as a result of the Defendants' breach of their duty owed to him.

**214.** As a result, Plaintiff was harmed.

**215.** Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, physical injury, anguish, anxiety, fear, humiliation, and damage to his reputation and standing within his community.

**216.** The Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorneys' fees and costs.

## THIRTEENTH CLAIM FOR RELIEF
## NEGLIGENT HIRING AND RETENTION AGAINST
## DEFENDANT THE CITY OF NEW YORK UNDER STATE LAW

**217.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**218.** Defendant THE CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the Defendant POLICE OFFICERS.

**219.** Defendant THE CITY OF NEW YORK knew, or should have known in the exercise of reasonable care, the propensities of the Defendant POLICE OFFICERS to engage in the wrongful conduct heretofore alleged in this Complaint.

**220.** As a result, the Plaintiff was harmed.

**221.** Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, physical injury, anguish, anxiety, fear, humiliation, and damage to his reputation and standing within his community.

**222.** The Plaintiff is entitled to compensatory damages from Defendant THE CITY OF NEW YORK in an amount to be determined at trial, together with attorneys' fees and costs.

## FOURTEENTH CLAIM FOR RELIEF

## NEGLIGENT TRAINING AND SUPERVISION AGAINST DEFENDANT THE CITY OF NEW YORK UNDER STATE LAW

**223.** Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

**224.** Defendant THE CITY OF NEW YORK failed to use reasonable care in the hiring and retention of the Defendant POLICE OFFICERS.

**225.** Defendant THE CITY OF NEW YORK failed to use reasonable care in the training and supervision of the Defendant POLICE OFFICERS, permitting and enabling them to engage in the wrongful conduct heretofore alleged in this Complaint.

**226.** As a result, Plaintiff was harmed.

**227.** Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, physical injury, anguish, anxiety, fear, humiliation, and damage to his reputation and standing within his community.

**228.** The Plaintiff is entitled to compensatory damages from Defendant THE CITY OF NEW YORK in an amount to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:      New York, New York
            September 18, 2014

Respectfully submitted,

~//s//~
_____
SAMUEL B. COHEN [SC 0622]
STECKLOW COHEN & THOMPSON
217 CENTRE ST- FL 6
NEW YORK, NY 10013
[212] 566-8000
[212] 202-4952/FAX
SAM@WYLIELAW.COM
ATTORNEYS FOR PLAINTIFF